G. LEDESMA & Co., PLAINTIFFS AND APPELLANTS, *v.* CENTRAL
CAMBALACHE, DEFENDANT AND RESPONDENT.

APPEAL from the District Court of Arecibo in an Action for
Rescission of Contract and Indemnity for Damages.

No. 1070.—Decided July 11, 1914.

CONTRACT FOR SALE. OF SUGAR—PRIVATE. CONTRACT—ASSUMPTION OF OBLIGA-
TIONS—THIRD PARTY.—When a private contract is entered into between the
owner of a central and a merchant for the sale of sugar for a fixed number
of years and the owner of the central sells the sugar to another person
without stipulating in the agreement that the purchaser assumes the obliga-
tions of the vendor as to the former contract, the purchaser is not bound to
comply with the said contract for the sale of the sugar.
AGENT.—In order that acts performed by A may bind B, it must be shown that
A acted as the real and lawful representative of B.
CONTRACT—DAMAGES—CONTRACTUAL RELATION.—When in an action for the rescis-
sion of a contract and an indemnity for damages the existence of a con-
tractual relation between the plaintiff and defendant is not shown, an indem-
nity for damages for lack of fulfilment of the contract cannot be recovered.
APPEAL—ERRORS.—Errors committed by the trial court in the admission and ex-
clusion of evidence which are not detrimental to the substantial rights of
the parties do not constitute grounds for the reversal of the judgment
appealed from.

The facts are stated in the opinion.

*Messrs. Cayetano Coll y Cuchí* and *Santiago B. Palmer* for
the appellants.

*Mr. Antonio Sarmiento* for the respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action for the rescission of a contract and for
damages in which judgment was rendered by the District
Court of Arecibo against the plaintiffs.

Summarized, the complaint alleges: 1st. That the plain-
tiffs are a general commercial partnership and that the de-
fendant is a corporation, both organized under the laws of
Porto Rico and domiciled in Arecibo; 2d. That the agricul-
tural partnership of Westphaling & Co., domiciled in Are-
cibo and owner of the Central Oriente, entered into a con-

tract with the plaintiffs which was set out in the following terms:

"ARECIBO, P. R., *July 10, 1909.*

"MESSRS. G. LEDESMA & Co.,
          "*Arecibo.*

"DEAR SIRS: In conformity with the conversation between your Don Manuel and our Don Carlos, you are appointed our agents for the sale of our sugars and those of our successors or assignees for a period of five years, with option on our part to renew the contract for five years more. You are to pay the highest market price f. o. b. in Arecibo, less 9 cents per 100 lbs. for lighterage and storage and 1 per cent commission. In case we should obtain a better offer from a third person and it should not suit you to outbid that offer, we are at liberty to sell our sugar to another purchaser, crediting you with 1 per cent commission on the first cost, but not allowing you the 9 cents for lighterage and storage.

          "Yours truly,

                    "(Signed)          WESTPHALING & Co."

3d. That subsequent to the date of the said contract the agricultural partnership of Westphaling & Co. was dissolved and a corporation known as Central Oriente was organized, which took charge of the assets and liabilities, as well as of all the rights and obligations of said partnership, and that, besides, the new corporation took charge of and assumed all the obligations of the contract for the sale and shipment of sugar entered into between Westphaling & Co. and G. Ledesma & Co., to which this action refers, which contract was duly complied with by the said Central Oriente during the crop which began in January and ended in June of 1910; 4th. That subsequent to June of 1910 the new corporation, Central Oriente, sold all its factories, lands and plantings to the defendant, Central Cambalache, Inc., the later taking charge of all the contracts and obligations of the former, and in compliance with the contract between Westphaling & Co. and the plaintiff partnership, which the latter alleges was transferred to the Central Oriente and later to the defendant corporation, said defendant corporation, Central Cambalache, Inc., de-

livered, during the crop which began in January and ended in June of 1911, all the sugars produced from the sugar-cane which could have been ground by the Central Oriente, Inc., to be sold and shipped by the plaintiff firm according to the terms and conditions of the said contract; 5th. That the plaintiffs made preparations and contracted serious obligations for the sale and shipment of the sugar to be manufactured and delivered to the plaintiffs by the defendant in 1912 in accordance with the terms of the said contract, and that the defendant, without cause or reason, refused to deliver the sugars to the plaintiffs; 6th. That the plaintiffs have sustained losses by the defendant's action to the amount of $54,000. The complaint concludes with the prayer that judgment be rendered against the defendant as follows: 1st. Rescinding the contract of shipment and sale of sugars of July 10, 1909; 2d. That it indemnify the plaintiffs in the sum of $54,000 for the losses which they sustained by reason of the noncompliance with the said contract; and 3d. That the defendant pay the costs, disbursements, and attorney's fees.

The following is a true copy of the pertinent parts of the answer to the complaint:

"1. Defendant denies, for want of information, the facts alleged in the second count of the complaint in the paragraph beginning 'And the plaintiff firm further alleges,' on to the end. The defendant alleges besides that this denial is not verified as regards the genuineness of the document copied in the complaint because it does not appear to be signed by said defendant.

"2. Defendant also denies, for lack of information, the facts alleged in the third count of the complaint.

"3. Defendant denies absolutely that the Central Oriente sold all of its lands and plantings to the defendant and that the latter took charge of all the contracts and obligations of the former, and denies in the same manner that in compliance with the contract which the complaint alleges was entered into between Westphaling & Co. and the plaintiffs, the defendant delivered to the latter during the crop of 1911 all the sugars produced from the canes which could have been ground by the Central Oriente, Inc., to be sold and shipped by

the said plaintiffs pursuant to the terms and conditions of the said contract.

"4. Defendant denies, for lack of information, the preparations and expenses for the crop of 1912 referred to in the fifth count of the complaint, and further denies absolutely that the defendant refused to deliver to the plaintiffs the sugars of the crop of 1912 which it should have delivered to them by virtue of the contract referred to in the complaint. Said contract, if it existed as alleged, was never accepted, much less complied with, by the defendant, nor was its fulfilment ever requested or demanded by anyone.

"5. Defendant absolutely denies the sixth count of the complaint and prays the court to render judgment, at the proper time, against the plaintiffs dismissing the complaint with costs, disbursements and a reasonable attorney's fee."

On June 10, 1913, both parties appeared by their attorneys before the district court and introduced evidence and submitted oral arguments. On October 1, 1913, after fully and carefully considering the pleadings and the evidence, the court rendered judgment dismissing the complaint without special imposition of costs. From that judgment the plaintiffs took the present appeal.

In our opinion, admitting that Westphaling & Co. contracted with the plaintiffs as set out in the letter transcribed in the second count of the complaint, the fundamental question to be decided in this case is simply whether or not such obligation passed to the defendant, Central Cambalache, Inc.

The allegations of the complaint referring to the obligations contracted by Central Oriente and Central Cambalache, Inc., in the contract for the sale and shipment of sugars entered into by Westphaling & Co. with the plaintiffs, having been denied, the burden was on the latter to prove them at the trial and they introduced documentary and oral evidence for that purpose.

The deeds by which Westphaling & Co. sold their rural properties and assigned their rights to Central Oriente, and the deeds by which Central Oriente sold and transferred all their properties, rights and interests to Central Cambalache,

Inc., are copied literally in the transcript of the record brought up to this court. We have examined them carefully and agree with the trial court that no reference is made in any part thereof to the contract for the sale and shipment of sugars referred to in this action  How, then, can the defendant be held liable for the fulfilment of the said contract? The fact that it was entered into by the former owner of the properties which are now owned by the defendant, is of no importance inasmuch as the contract under consideration is a purely personal one and does not affect the properties conveyed.

The plaintiffs submit the following statement as a forcible argument in support of their contention when considered in the light of the testimony of their witnesses:

"STATEMENT OF THE SUGAR OF CENTRAL CAMBALACHE FOR THE CROP OF 1911.

```
Total manufactured ..........................  146,144 sacks.
Less direct sales by the Central.............       52   "
                                               ─────────────
                                               146,092 sacks.
Less 15,000 sacks transferred by Roses to
    Ledesma as from Oriente.................    15,000   "     131,092 sacks.
                                               ─────────────
       75% Roses               98,319 sacks.
       25% Ledesma             32,773   "                      131,092   "
```

*Purchases:*

```
Roses        100,092 sacks             100,092 sacks      Over  1,773 sacks.
Ledesma       46,000   "   —15,000      31,000   "        Less  1,773   "
             ───────────────           ───────────────
             146,092 sacks             131,092 sacks
```

| *Shipments:* | *Roses* | *Ledesma* | *Total* | |
|---|---|---|---|---|
| By Steamer | 69,200 | 35,000 | 104,200 | sacks. |
| By R.R. | 20,000 | 11,000 | 31,000 | " |
| Used | 10,892 | ...... | 10,892 | " |
| | 100,092 sacks | 46,000 sacks | 146,092 | sacks. |

*Exported:*

```
By Steamer    104,200 sacks
By R.R.        31,000   "          135,200 sacks
             ─────────────
Proportion R.R.  22.92%
    89,200 sacks        Roses     20,450 sacks      Less    450 sacks
    46,000   "          Ledesma   10,550   "        Over    450   "
```

*Final Liquidation:*

Roses credits Ledesma:

```
    4¢ profit quintal on 1,773 sacks total excess 4,433 quintals......  $177 32
    1¢ com. on basis of $4 per quintal............................       177.32
    4¢ profit quintal on 50 sacks — 1,125 quintals...................     45.00
                                                                        ─────────
                                                                        $399.64
```

Arecibo, P. R., September 22, 1911. Seal. Successors of Roses & Co. Arecibo, P. R."

The testimony of witnesses Ledesma, manager, and Astor, general attorney in fact, of the plaintiffs, in relation to the statement transcribed, tends to show that in 1911 Central Cambalache, Inc., actually complied with the contract entered into by Westphaling & Co. with the plaintiff firm. Nevertheless, we agree also with the trial court that this evidence cannot be given the scope attributed to it by plaintiffs. While it is true that the foregoing statement contains the words, "Less 15,000 sacks transferred by Roses to Ledesma as from Oriente," it does not appear that this statement was authorized by Central Cambalache, Inc., but by the Successors of Roses & Co., who have not been shown conclusively to be the lawful representatives of Central Cambalache.

Having reached the conclusion that the existence of the contractual relation between the plaintiffs and the defendant alleged in the complaint has not been proved, it would be idle to discuss the matter of damages. If there is no contract, no claim lies for damages for its nonfulfilment.

There is also included in the transcript of the record a bill of exceptions setting out two exceptions taken by the plaintiff during the trial. One refers to a supposed error committed by the court in not allowing the plaintiffs to prove the damages sustained by them for the year 1914 and the other to the action of the court in permitting the defendant to introduce in evidence certain documents tending to show that Ledesma himself, the manager of the plaintiff firm, being the president of the board of directors of Central Cambalache, it was resolved by the board to sell all the crop of 1912 to Georgetti, Cintrón, Aboy & Co. Even though the errors alleged had been committed, they would have no influence upon the decision of this appeal. As to the first, because we have seen that there is no basis for a consideration of whether or not damages were suffered by the plaintiffs, and as to the second, because the evidence offered and admitted is not necessary for arriving at the conclusion that the existence of the contract alleged in the complaint to have been entered into

between the plaintiffs and the defendant, has not been proved. The decision of this case is sustained by the pleadings of both parties and by the evidence of the plaintiffs.

The judgment appealed from should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justice Wolf and Aldrey concurred.

Mr. Justice Hutchison took no part in the decision of this case.